# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID B. TOWNSEND, | Case No. SACV 13-402-JEM |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## PROCEEDINGS

On March 7, 2013, David B. Townsend ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security Disability Insurance benefits. The Commissioner filed an Answer on June 11, 2013. On August 5, 2013, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision must be affirmed and this case dismissed with prejudice.

**BACKGROUND**

Plaintiff is a 55-year-old male who applied for Social Security Disability Insurance benefits on January 25, 2010.  (AR 22.)  The ALJ determined that Plaintiff has not engaged in substantial gainful activity since March 1, 2005, the alleged onset date of his disability.  (AR 26.)

Plaintiff's claim was denied initially on April 13, 2010, and on reconsideration on July 27, 2010.  (AR 22.)  Plaintiff then sought review and on April 28, 2011, the matter proceeded to a hearing before Administrative Law Judge ("ALJ") Joseph Lisiecki in Orange, California.  (AR 22.)  Claimant appeared and testified at the hearing and was represented by counsel.  (AR 22.) Medical expert ("ME") Dr. Alanson A. Mason and vocational expert ("VE") Kelly Winn-Boaitey also appeared and testified at the hearing.  (AR 22.)

The ALJ issued an unfavorable decision on May 31, 2011.  (AR 22-35.)  The Appeals Council denied review on January 10, 2013.  (AR 1-6.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1.    Whether substantial evidence supports the finding that Mr. Townsend's physical conditions medically improved as of March 2, 2006 to the extent that, at that time, he regained the ability to perform a reduced range of sedentary work.

2.    Whether the ALJ erred in rejecting the functional capacity assessments of treating internist Lee and treating pain management specialist Martin.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v.

Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has established a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746.  An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746.  If the impairment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141.  Fourth, the ALJ must determine

3

1    whether the impairment prevents the claimant from doing past relevant work.  <u>Pinto v.</u>

2    <u>Massanari</u>, 249 F.3d 840, 844-45 (9th Cir. 2001).

3        Before making the step four determination, the ALJ first must determine the claimant's

4    residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  Residual functional capacity

5    ("RFC") is "the most [one] can still do despite [his or her] limitations" and represents an

6    assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

7    The RFC must consider all of the claimant's impairments, including those that are not severe.

8    20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

9        If the claimant cannot perform his or her past relevant work or has no past relevant work,

10    the ALJ proceeds to the fifth step and must determine whether the impairment prevents the

11    claimant from performing any other substantial gainful activity.  <u>Moore v. Apfel</u>, 216 F.3d 864,

12    869 (9th Cir. 2000).  The claimant bears the burden of proving steps one through four,

13    consistent with the general rule that at all times the burden is on the claimant to establish his or

14    her entitlement to benefits.  <u>Parra</u>, 481 F.3d at 746.  Once this prima facie case is established

15    by the claimant, the burden shifts to the Commissioner to show that the claimant may perform

16    other gainful activity.  <u>Lounsburry v. Barnhart</u>, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support

17    a finding that a claimant is not disabled at step five, the Commissioner must provide evidence

18    demonstrating that other work exists in significant numbers in the national economy that the

19    claimant can do, given his or her RFC, age, education, and work experience.  20 C.F.R.

20    § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and

21    entitled to benefits.  <u>Id.</u>

22                 **THE ALJ DECISION**

23        In this case, the ALJ determined at step one of the sequential process that Plaintiff has

24    not engaged in substantial gainful activity since March 1, 2005, the alleged onset date.  (AR

25    26.)

26        At step two, the ALJ determined that Plaintiff has had the following combination of

27    medically determinable severe impairments: sciatica; disc protrusion at the L4-5 level;

28    fibromyalgia; and chronic pain syndrome.  (AR 26.)

At step three, the ALJ found that, from March 1, 2005, through March 1, 2006, a period during which Plaintiff was disabled, Plaintiff met the 1.04(A) listing requirements for sciatica and disc protrusion.  (AR 26.)  The ALJ, however, determined that medical improvement occurred as of March 2, 2006, the date the Claimant's disability ended.  (AR 28.)  The ALJ also determined that, beginning on March 2, 2006, Claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments.  (AR 28-29.)

The ALJ then found that, beginning on March 2, 2006, Claimant has had the residual functional capacity ("RFC") to perform light work with the following limitations:

> Claimant can occasionally lift and/or carry up to 20 pounds and can frequently lift and/or carry up to 10 pounds; Claimant can stand and/or walk (with normal breaks) for a total of 2 hours of an 8 hour day and can sit (with normal breaks) for a total of 6 hours of an 8 hour day.  Claimant must be allowed to utilize a sit/stand option at will.  Claimant can occasionally climb ramps and stairs, and perform other postural movements such as stooping, kneeling, crouching and balancing, but can never climbs ladders, ropes, or scaffolds and never crawl.  He should avoid concentrated exposure to extreme cold, unprotected heights, and moving machinery, as well as the use of hand-held vibrating equipment.

(AR 29-33.)  In determining the RFC, the ALJ made an adverse credibility determination, which is not challenged here.  (AR 31.)

At step four, the ALJ found that, beginning on March 2, 2006, Plaintiff has been unable to perform past relevant work.  (AR 33.)  The ALJ, however, also found that, beginning on March 2, 2006, and considering Claimant's age, education, work experience and RFC, there are a significant number of jobs in the national economy that Plaintiff can perform, including telephone quotation clerk and charge account clerk.  (AR 34.)

Consequently, the ALJ determined that Claimant's disability ended on March 2, 2006.  (AR 34.)

**DISCUSSION**

The ALJ decision must be affirmed.  The ALJ's finding of medical improvement is supported by substantial evidence.  The ALJ properly discounted the opinions of Claimant's treating physicians for specific, legitimate reasons supported by substantial evidence.

The ALJ's RFC is supported by substantial evidence.  The ALJ's non-disability determination is supported by substantial evidence and free of legal error.

**I.     THE ALJ'S MEDICAL IMPROVEMENT FINDING IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff contends that the ALJ's medical improvement finding is not supported by substantial evidence.  The Court disagrees.

**A.     Relevant Legal Standards Regarding Medical Improvement**

An individual is "disabled" for the purpose of receiving benefits under the Act if he or she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months.  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "Once a claimant has been found to be disabled, . . . a presumption of continuing disability arises in her favor[, and the Commissioner] bears the burden of producing evidence sufficient to rebut this presumption of continuing disability." Bellamy v. Sec'y of Health & Human Serv., 755 F.2d 1380, 1381 (9th Cir. 1985); see also Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983) (disability benefits cannot be terminated without evidence of improvement which is reviewed under the substantial evidence standard).

A recipient whose condition has improved medically so that he or she is able to engage in substantial gainful activity is no longer disabled.  42 U.S.C. § 1382c(a)(4); 20 C.F.R § 416.994; Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1459 (9th Cir. 1995).  A medical improvement is:

[A]ny decrease in the medical severity of [a recipient's] impairment(s) which was present at the time of the most recent favorable medical decision that [the recipient was] disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on

6

1    changes (improvement) in the symptoms, signs and/or laboratory findings

2    associated with [the recipient's] impairment(s) . . . .

3  20 C.F.R § 416.994(b)(1)(i), (2)(i).

4        The ALJ applied and followed the seven-step evaluation process set forth in 20 C.F.R. §

5  416.994 to determine if a claimant continues to be disabled.

6        At step one, the ALJ must determine whether the claimant has an impairment or

7  combination of impairments that meets or medically equals the criteria of an impairment listed in

8  20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).  If

9  the claimant does, her disability continues (20 C.F.R. § 416.994(b)(5)(i)).

10        At step two, the ALJ must determine whether medical improvement has occurred (20

11  C.F.R. § 416.994(b)(5)(ii)).  Medical improvement is any decrease in medical severity of the

12  impairment(s) as established by improvement in symptoms, signs, and/or laboratory findings

13  (20 C.F.R. § 416.994(b)(1)(i)).  If medical improvement has occurred, the analysis proceeds to

14  the third step.  If not, the analysis proceeds to the fourth step.

15        At step three, the ALJ must determine whether medical improvement is related to the

16  ability to work (20 C.F.R. § 416.994(b)(5)(iii)).  Medical improvement is related to the ability to

17  work if it results in an increase in the claimant's capacity to perform basic work activities (20

18  C.F.R. § 416.994(b)(1)(iii)).  If it does, the analysis proceeds to the fifth step.

19        At step four, the ALJ must determine if an exception to medical improvements applies

20  (20 C.F.R. § 416.994(b)(5)(iv)).  There are two groups of exceptions (20 C.F.R. § 416.994(b)(3)

21  and (b)(4)).  If one of the first group exceptions applies, the analysis proceeds to the next step.

22  If one of the second group exceptions applies, the claimant's disability ends.  If none apply, the

23  claimant's disability continues.

24        At step five, the ALJ must determine whether all the claimant's current impairments in

25  combination are severe (20 CFR § 416.994(b)(5)(v)).  If all current impairments in combination

26  do not significantly limit the claimant's ability to do basic work activities, the claimant is no

27  longer disabled.  If they do, the analysis proceeds to step six.

28

7

At step six, the ALJ must assess the claimant's residual functional capacity based on the current impairments and determine if she can perform past relevant work (20 CFR § 416.994(b)(5)(vi)).  If the claimant has the capacity to perform past relevant work, her disability has ended.  If not, the analysis proceeds to step seven.

At step seven, the ALJ must determine whether other work exists that the claimant can perform, given her residual functional capacity and considering her age, education, and past work experience (20 CFR § 416.994(b)(5)(vii)).  If the claimant can perform other work, she is no longer disabled.  If the claimant cannot perform other work, her disability continues.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given her residual functional capacity, age, education, and work experience.

### B.    Analysis

The Commissioner bears the burden of demonstrating medical improvement.  <u>Bellamy</u>, 755 F.3d at 1381.  The ALJ's finding here that medical improvement occurred, beginning March 2, 2006, is supported by substantial evidence.

Plaintiff underwent a diskectomy on May 24, 2005 because of persistent lower back pain and lower extremity pain, and continued to undergo treatment through early 2006.  (AR 27, 30.)  A post-surgical MRI dated September 14, 2005 showed marked improvement in the posterior disc extrusion.  (AR 27.)  By July of 2006, an MRI showed "no evidence of disc herniation or neural element compression" and a clear and unimpeded spinal canal.  (AR 27, 30, 31.)  Subsequent MRIs in 2007 and 2011 showed only mild degenerative disease.  (AR 31.)  Two separate neurological consultations since surgery indicated that Claimant has "no structural problem amenable to neurosurgical intervention" and recommended conservative treatment.  (AR 31.)  There are numerous reports of improvement in the record.  (AR 31.)  Indeed, Plaintiff did not see his pain management physician for two years from 2007 to 2009 implying he was pain-free, contrary to his testimony.  (AR 31.)  There also are gaps in the treatment record with his primary physician, Dr. Lee.  (AR 31.)  Infrequent conservative treatment is not indicative of a

disabling impairment.  Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001).  Additionally, the testifying medical expert Dr. Mason and State agency reviewing physician Dr. Lizarraras opined that Plaintiff could work, and provided the basis for the ALJ's RFC.  (AR 32.)  Although they did not examine Plaintiff, their opinions constitute substantial evidence because they are based on the independent medical evidence of record, most notably the MRIs.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

Plaintiff relies heavily on the opinions of his treating physicians but the ALJ properly discounted these opinions for specific, legitimate reasons supported by substantial evidence as discussed below.  The ALJ also discounted Plaintiff's subjective symptom testimony, a finding Plaintiff does not challenge.  (AR 31-32.)  In particular, the ALJ noted that Plaintiff went on a family fishing trip to Mt. Shasta and was able to catch fish, which appeared inconsistent with allegations of disabling pain.  (AR 32.)

Plaintiff refers to other evidence in the record but the ALJ has the responsibility for resolving conflicts in the medical evidence and ambiguities in the record.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  Where the ALJ's interpretation of the evidence is reasonable as it is here, it should not be second-guessed.  Rollins, 261 F.3d at 857.

The ALJ met the Commissioner's burden to prove medical improvement.  The ALJ's finding is supported by substantial evidence.

**II.    THE ALJ PROPERLY DISCOUNTED THE OPINIONS OF PLAINTIFF'S TREATING PHYSICIANS**

Plaintiff contends the ALJ improperly discounted the opinions of his treating physicians. The Court disagrees.

**A.    Relevant Federal Law**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians).  See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  In

general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  Lester, 81 F.3d at 830.  However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas, 278 F.3d at 957.  Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings.  See Andrews, 53 F.3d at 1041; Orn, 495 F.3d at 632.  Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it.  Id.  However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record.  Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

**B.    Analysis**

The ALJ gave but minimal weight to the opinions of Claimant's treating physicians, Dr. Keith Lee and Dr. Scott Martin, regarding Claimant's impairments and functional limitations following March 2, 2006.  (AR 32.)  Although treating physician opinions are generally given

greater weight than those of other physicians, 20 C.F.R. § 404.1527(c)(2), an ALJ "may disregard a treating physician's opinion whether or not that opinion is contradicted." Magallanes, 881 F.2d at 751.  In particular, an ALJ may reject a treating physician's opinion that conflicts with the physician's own treatment notes, Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003), or is brief, conclusory or inadequately supported by medical evidence.  Thomas, 278 F.3d at 957.  The treating physician's opinion, moreover, is not binding on the ALJ "with respect to the existence of an impairment or the ultimate determination of disability."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

In this case, the treating physician opinions are contradicted by the opinions of Dr. Mason and Dr. Lizarraras.  The ALJ proffered specific, legitimate reasons supported by substantial evidence for discounting the opinions of Dr. Lee and Dr. Martin.

Plaintiff's treating internist and primary care physician Dr. Keith Lee completed a Multiple Impairment Questionnaire dated February 22, 2010 diagnosing chronic pain, fibromyalgia and sciatica.  (AR 230.)  Dr. Lee opined Plaintiff can sit and stand/walk no more than an hour, needing to get up and move around every 10 minutes for 15 minutes at a time and lift or carry up to five pounds occasionally.  (AR 233-234, 1037.)  Dr. Lee further opined that Plaintiff would be incapable of even a "low stress" work environment.  (AR 235; 1037.)

The ALJ found inconsistencies between Dr. Lee's opinions in the questionnaire he submitted and his treatment records.  (AR 33.)  His RFC limited Plaintiff to sitting/ standing/walking to one hour but presented no specific findings (other than annular tears and lipomatosis identified by MRI, as well as chronic pain and fibromyalgia) to substantiate such restrictions.  (AR 33.)  He found marked manipulative restrictions which were "unsupported by any objective testing or even his own treatment records."  (AR 33.)  Indeed, the ALJ did not find any mention of restrictions within Dr. Lee's treatment records, "which is suspect given the provider's very restrictive limitations in the questionnaire."  (AR 33.)  The ALJ further found that laboratory testing for the C-reactive protein and rheumatoid factor have both been normal or show a normal measure of inflammation, "indicative of no significant arthritic process and also inconsistent with a diagnosis of fibromyalgia."  (AR 31.)  Physical examination findings have

been positive for back pain and myalgias, but negative for bone/joint symptoms or weakness, gait disturbance or fatigue.  (AR 31-32.)  Dr. Lee's most recent treatment records specifically indicate negative gait disturbance and normal musculature with no skeletal tenderness or joint deformity, although there was swelling in the lower back.  (AR 32.)  Claimant's extremities appeared normal with no edema.  (AR 32.)  The ALJ concluded that Dr. Lee's opinion was not corroborated by the objective medical evidence of record.  (AR 33.)

Plaintiff asserts that the ALJ inappropriately concluded that Dr. Lee's findings are insufficient to support his RFC but the ALJ's rejection of Dr. Lee's RFC is supported by the opinions of Dr. Mason and Dr. Lizarraras, the objective MRI testing and Claimant's lack of credibility.  In particular, Dr. Lizarraras observed that the American Rheumatology Association criteria for fibromyalgia have not been documented.  (AR 32, 938.)  Plaintiff also challenges the ALJ's findings that Dr. Lee's manipulative limitations are not supported by his treatment notes but Dr. Mason, reviewing the entire record, found that no manipulative limitations have been established.  (AR 52.)  The ALJ properly gave Dr. Lee's opinion little weight because of the lack of corroboration by the objective medical evidence of his RFC.  (AR 33.)

Plaintiff was referred by Dr. Lee to Dr. Martin, a pain management specialist.  (AR 30.) In 2007, Dr. Martin diagnosed left sacroiliac mediated pain, post-laminectomy pain and lumbar radiculitis.  (AR 227.)  Dr. Martin administered branch blocks and radio-frequency ablations. (AR 30.)  In a February 9, 2010 Spinal Impairment Questionnaire Dr. Martin offered a RFC similar to that of Dr. Lee, opining Claimant was incapable of even a low stress work environment and "unable to work."  (AR 209.)  Dr. Martin estimated that Claimant's disabling limitations have applied since January 10, 2005.  (AR 210.)

The ALJ found Dr. Martin's opinion at odds with the objective medical evidence of record, in particular the MRIs.  (AR 32.)  The ALJ also found Dr. Martin's RFC to be "in direct, glaring conflict to his own treatment notes and surgical records which note drastic and 'fantastic' improvement."  (AR 32.)  For example, Dr. Martin's notes show Claimant reported "80% improvement in low back pain after the first branch block" and "fantastic improvement in the low back pain after two branch blocks."  (AR 31.)  Dr. Martin's records also report "fantastic

response" to radio-frequency ablation.  (AR 31.)  Treatment notes also indicated a previous ablation had "worked brilliantly" for 1.5 years.  (AR 31, 213.)  The ALJ further noted that there is no record of his diagnosis of fibromyalgia and chronic pain impairments in his treatment notes, and no mention in his treatment records of any atrophy in Claimant's calf and lumbar areas. (AR 32.)  Plaintiff challenges the ALJ's fibromyalgia comment on the basis that Dr. Martin would have relied on Dr. Lee's fibromyalgia diagnosis but the ALJ's point was that there was no documentation of the criteria for fibromyalgia anywhere in the record, even by Dr. Lee.  (AR 32.) The ALJ also noted the omission of Claimant's sporadic treatment with Dr. Martin in Dr. Martin's questionnaire, even though Dr. Martin indicated he treated Plaintiff monthly.  (AR 32-33.)  The ALJ also faulted Dr. Martin because in his questionnaire he stated Plaintiff's symptoms began in January 2005 though Dr. Martin did not begin treating Claimant until June of 2007.  (AR 32.)

Plaintiff disagrees with the ALJ's interpretation of the evidence of record but the ALJ has the responsibility for resolving conflicts in the medical evidence.  Andrews, 53 F.3d at 1039. Again, where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed.  Rollins, 261 F.3d at 857.

The ALJ properly discounted the opinions of Plaintiff's treating physicians for specific, legitimate reasons supported by substantial evidence.

* * *

The ALJ's medical improvement finding is supported by substantial evidence.  The ALJ properly discounted the opinions of Plaintiff's treating physicians.

The ALJ's RFC is supported by substantial evidence.  The ALJ's non-disability determination is supported by substantial evidence and free of legal error.

### ORDER

IT IS HEREBY ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this case with prejudice.

DATED:  August 22, 2013            _____/s/ John E. McDermott_____
                                                    JOHN E. MCDERMOTT
                                                    UNITED STATES MAGISTRATE JUDGE